

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 288 |
| v. | ) | |
| | ) | Honorable Matthew F. Kennelly |
| JEROME E. ADAMS | ) | |

### PLEA DECLARATION

The Defendant, JEROME E. ADAMS, after extensive consultation with his attorney, ROSE J. LINDSAY, acknowledges and states the following:

### The Charges

1. Mr. Adams has been charged in a three-count indictment with bank robbery (Counts One and Three), and entering a bank with intent to commit a felony (Count Two), all in violation of 18 U.S.C. § 2113(a).

2. Mr. Adams has read the charges against him contained in the indictment and they have been fully explained to him by his attorney.

3. Mr. Adams fully understands the nature and elements of the offenses with which he has been charged. Specifically, Mr. Adams understands that the statutory elements of violations of 18 U.S.C. § 2113(a), to which he is pleading guilty in Counts One, Two, and Three, are as follows:

### Count One:

(a) Mr. Adams took from the presence or person of another money belonging to or in the care, custody, control, management, or possession of Austin Bank, located at 9443 South Ashland Avenue in Chicago;

(b)      Mr. Adams acted to take such money from Austin Bank by intimidation, which Mr. Adams understands to mean that he said or did something in such a way as would place a reasonable person in fear; and

(c)      At the time charged in the indictment, Austin Bank had its deposits insured by the Federal Deposit Insurance Corporation.

**Count Two:**

(a)      Mr. Adams entered Seaway Bank and Trust, located at 645 East 87th Street in Chicago;

(b)      At the time charged in the indictment, Mr. Adams entered Seaway Bank and Trust with the intent to commit a felony affecting the bank, namely, bank robbery; and

(c)      At the time charged in the indictment, Seaway Bank and Trust had its deposits insured by the Federal Deposit Insurance Corporation.

**Count Three:**

(a)      Mr. Adams took from the presence or person of another money belonging to or in the care, custody, control, management, or possession of Citibank, located at 8650 South Stony Island Avenue in Chicago;

(b)      Mr. Adams acted to take such money from Citibank by intimidation, which Mr. Adams understands to mean that he said or did something in such a way as would place a reasonable person in fear; and

(c)      At the time charged in the indictment, Citibank had its deposits insured by the Federal Deposit Insurance Corporation.

## Factual Basis

4. Mr. Adams will enter a voluntary plea of guilty to Counts One, Two, and Three of the indictment.

5. Mr. Adams will plead guilty because he is in fact guilty of the charges contained in Counts One, Two, and Three of the indictment. In pleading guilty, he acknowledges the following:

With respect to Count One, on April 7, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, Mr. Adams did, by intimidation, take from the person and presence of bank employees approximately $2,850 in United States currency belonging to or in the care, custody, control, management, and possession of Austin Bank, located at 9443 South Ashland Avenue, Chicago, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of 18 U.S.C. § 2113(a).

Specifically, on April 7, 2008, at approximately 2:45 p.m., Mr. Adams entered Austin Bank, located at 9443 South Ashland Avenue in Chicago. He approached a teller and handed her a demand note that read: "Do not push any alarm nor give me any die packs. Give me denominations of $100's, 50's, 20's and 10's from your drawer in the amount of $25,000. And no one will get hurt." The teller complied and handed Mr. Adams stacks of money. Mr. Adams then said to the teller, "That's enough." Mr. Adams took the money the teller had provided, which totaled approximately $2,850, and put it in a white envelope he carried with him. He then left the bank, leaving the demand note behind.

With respect to Count Two, on April 8, 2008, at Chicago, in the Northern District

of Illinois, Eastern Division, Mr. Adams entered Seaway Bank and Trust, located at 645 East 87th Street, Chicago, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, with the intent to commit a felony, namely, the taking, by intimidation, from the person and presence of bank employees United States currency belonging to and in the care custody, control, management, and possession of Seaway Bank and Trust, in violation of 18 U.S.C. § 2113(a).

Specifically, on April 8, 2008, Mr. Adams entered Seaway Bank and Trust, located at 645 East 87th Street in Chicago, at approximately 9:50 a.m. Mr. Adams approached a teller and asked for the $100s and $50s from her drawer ~~with the intent to rob the bank~~. The teller did not comply. Mr. Adams believes that he may have then said to the teller, "Have a nice day," before leaving the bank.

With respect to Count Three, on April 8, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, Mr. Adams did, by intimidation, take from the person and presence of bank employees approximately $3,749 in United States currency belonging to or in the care, custody, control, management, and possession of Citibank, located at 8650 South Stony Island Avenue, Chicago, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of 18 U.S.C. § 2113(a).

Specifically, at approximately 10:14 a.m., Mr. Adams entered Citibank, located at 8650 South Stony Island Avenue in Chicago. He approached a teller and handed her a demand note that read something to the effect of "Give me $100s and $50s." Mr. Adams believes the note may have also requested $20s and $10s. Mr. Adams then spoke to the

teller. He believes he may have asked the teller specifically for $100s and $50s. The teller complied and handed Mr. Adams approximately $3,749. Mr. Adams took the money and the demand note, and left the bank.

### Maximum Potential Penalties

6. Mr. Adams understands that the three counts to which he will plead guilty each carry a maximum penalty of twenty years' imprisonment, a maximum fine of $250,000, and a term of supervised release of at least two but no more than three years. Mr. Adams understands that he could therefore face a total term of imprisonment of up to 60 years, a total fine of up to $750,000, and a term of supervised release of at least two but not more than three years.

7. Mr. Adams understands that full restitution is mandatory, pursuant to 18 U.S.C. § 3663A, and must be ordered in this case, minus any amounts that Mr. Adams may repay prior to sentencing. It is Mr. Adams's understanding at the time of signing this Plea Declaration that the restitution amount likely to be ordered is $6,599 (representing restitution payable to Austin Bank in the amount of $2,850 and restitution payable to Citibank in the amount of $3,749). However, it is Mr. Adams's understanding that the Court's final restitution order will reflect the fact that the proceeds of the Citibank robbery were recovered in full by law enforcement at the time of his arrest.

8. Mr. Adams understands that pursuant to 18 U.S.C. § 3013, upon entry of judgment of conviction, he will be assessed $300 for the three counts to which he pleads guilty, in addition to any other penalties imposed.

### The Advisory Guidelines

9. Mr. Adams understands that the sentencing guidelines promulgated by the United States Sentencing Commission pursuant to 28 U.S.C. § 994 are merely advisory, not mandatory, in accordance with United States v. Booker, 543 U.S. 220 (2005). Mr. Adams understands that the Court must, however, consider the guidelines in determining an appropriate sentence.

10. For purposes of calculating the advisory sentencing range under the current November 1, 2007 guidelines manual, Mr. Adams understands that the following guidelines may apply:

**Count One:**

(a) Pursuant to Guideline § 2B3.1(a), the base offense level is 20.

(b) Pursuant to Guideline § 2B3.1(b)(1), the offense level is increased by two levels because the property of a financial institution was taken.

(c) Therefore, the anticipated offense level for Count One is 22.

**Count Two:**

(a) Pursuant to Guideline § 2B3.1(a), the base offense level is 20.

(b) Pursuant to Guideline § 2B3.1(b)(1), the offense level is increased by two levels because the taking of property of a financial institution was an object of the offense.

(c) Therefore, the anticipated offense level for Count Two is 22.

**Count Three:**

(a) Pursuant to Guideline § 2B3.1(a), the base offense level is 20.

(b) Pursuant to Guideline § 2B3.1(b)(1), the offense level is increased by two levels

because the property of a financial institution was taken.

(c)  Therefore, the anticipated offense level for Count Three is 22.

**Grouping:**

Pursuant to Guideline § 3D1.2(d), the offenses are not grouped together and each offense represents a distinct group. Pursuant to Guideline § 3D1.4, each offense is assigned one unit, resulting in a total of three units. The highest offense level from the three counts, level 22, is thus increased by three levels, for a resulting adjusted offense level of 25.

**Acceptance of Responsibility:**

Mr. Adams admits his guilt, is remorseful for his crimes, and accepts full responsibility for his conduct. In addition, Mr. Adams has timely notified the government of his intention to plead guilty, thereby permitting the government to avoid preparing for trial and permitting the government to allocate its resources efficiently. Accordingly, he understands that a three-level reduction for acceptance of responsibility under Guideline § 3E1.1 should apply, which would result in an offense level of 22.

**Criminal History Category:**

As of the time of Mr. Adams's plea, it is his understanding that he has approximately seven criminal history points, which would place him in criminal history category IV.

**Anticipated Advisory Guidelines Range:**

Mr. Adams understands that if his offense level is 22 and he falls in criminal history category IV, his resulting advisory guidelines range would be 63–78 months' imprisonment in Zone D of the sentencing table.

**Other Guidelines Considerations:**

Mr. Adams understands that this calculation of the advisory guidelines range is preliminary in nature, and is thus a nonbinding estimation of how the guidelines may apply to his case at the time of sentencing. Mr. Adams understands that the United States Probation Office will conduct its own investigation but that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guidelines calculations.

Mr. Adams understands that errors in calculation or interpretation of any guidelines and/or laws applicable to his case may be corrected or amended prior to sentencing. Mr. Adams understands that he may seek to correct these errors or misinterpretations by a statement to the probation office and/or the Court setting forth the disagreement as to the correct guidelines and/or laws and their applications.

Mr. Adams reserves the right to request a downward departure or variance from the applicable guidelines range on any grounds he deems appropriate. Mr. Adams understands that any decision to impose a sentence outside the advisory guidelines range established at the time of sentencing lies solely within the discretion of the Court.

## Trial Rights and Appellate Rights

11. Mr. Adams understands that by pleading guilty, he surrenders certain rights, including the following:

    (a) If Defendant persisted in a plea of not guilty to the charge against him, he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial.

8

However, in order that the trial be conducted by the judge sitting without a jury, Defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that Defendant is presumed innocent, and that it could not convict him unless, after hearing the evidence, it was persuaded of Defendant's guilt beyond a reasonable doubt.

(c) If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not he was persuaded of Defendant's guilt beyond a reasonable doubt.

(d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against Defendant. He would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, Defendant could present witnesses and other evidence in his own behalf. He would be under no obligation to do so, however, because he is presumed to be innocent and, therefore, need not prove his innocence. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

    (e)    At a trial, Defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If Defendant desired to do so, he could testify in his own behalf.

12. Mr. Adams understands that by pleading guilty, he is waiving all the rights set forth in the prior paragraph. By pleading guilty, Mr. Adams admits his guilt and agrees that he should be found guilty. Mr. Adams's attorney has explained those rights to him, and the consequences of his waiver of those rights. Mr. Adams further understands that he is waiving all appellate issues that might have been available if he had exercised his right to trial, and only may appeal the validity of his plea of guilty or the sentence imposed.

### Limitations and Consequences of this Plea Declaration

13. Mr. Adams understands that the United States Attorney's Office will fully apprise the Court and the United States Probation Office of the nature, scope, and extent of his conduct regarding the charge against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing. Mr. Adams further understands that he will be able to present evidence in mitigation at the time of sentencing pursuant to 18 U.S.C. § 3553(a).

14. Mr. Adams understands that the sentencing guidelines are no longer mandatory, and that the Court's decision as to what sentence constitutes a sentence that is "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a) may result in a sentence either within the applicable advisory guidelines range or outside it, whether higher or lower than that range. Mr. Adams understands that the applicable guidelines range is one of several factors the Court is required to take into consideration

under 18 U.S.C. § 3553(a) in determining an appropriate sentence.

15. Mr. Adams understands that at the time of sentencing, he and the government will be free to make their respective sentencing recommendations to the Court as they deem appropriate, based on the sentencing factors set forth in 18 U.S.C. § 3553(a).

16. Should the Court refuse to accept Mr. Adams's plea of guilty, this Plea Declaration shall become null and void and Mr. Adams will not be bound hereto. It is Mr. Adams's position that, should the Court decline to accept his plea, this Plea Declaration and the ensuing court proceedings are inadmissible in future court proceedings pursuant to Federal Rules of Criminal Procedure 11(e)(6)(A), (C), and (D) and Federal Rule of Evidence 410.

17. Mr. Adams agrees that this Plea Declaration shall be filed and become part of the record of this case.

18. Mr. Adams and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, to induce Mr. Adams to plead guilty. Mr. Adams further acknowledges that he has read this Plea Declaration and carefully reviewed each provision with his attorney.

Signed this 16th day of July, 2008

*Jerome Adams*
Jerome E. Adams, Defendant

FEDERAL DEFENDER PROGRAM
Terence F. MacCarthy
Executive Director

By: *Rose Lindsay*
Rose J. Lindsay
*Attorney for Jerome E. Adams*
FEDERAL DEFENDER PROGRAM
55 East Monroe St., Ste. 2800
Chicago, IL 60603
(312) 621-8341